```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JOSEPH TIMONEY, JR.              :        CIVIL ACTION
                                 :
        v.                       :
                                 :
WILLIAM LOUGHERY, et al.         :        NO. 14-4774
```

MEMORANDUM

Bartle, J.                                               July 7, 2015

This action arises out of an ownership dispute over a residential property in Upper Gwynedd Township, Montgomery County. Plaintiff Joseph Timoney, Jr. ("plaintiff") has filed suit against William and Jennifer Loughery (the "Lougherys"), a married couple, and Stephen Howard ("Howard"), an attorney and the father of Jennifer Loughery. Plaintiff also names ten "John Does" as defendants.[1] In his Second Amended Complaint, plaintiff asserts a claim against all defendants styled as "violation of due process [under the U.S. Constitution Amendments IV and XIV & State Law]." The Second Amended Complaint also contains a negligence claim against all defendants and an assault and battery claim against

---

1. In an order dated December 19, 2014, we dismissed additional claims raised by plaintiff against Upper Gwynedd Township and one of its police officers, Edward Tartar. On March 18, 2015, we dismissed plaintiff's constitutional claims against Howard. Plaintiff's state-law claims against Howard are still pending.

Howard. The Lougherys and Howard have each answered plaintiff's Second Amended complaint.[2]

Before the court is the motion of the Lougherys for partial judgment on the pleadings as to plaintiff's claims against them pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.[3]

I.

The facts set forth in the Second Amended Complaint, taken in the light most favorable to plaintiff, are as follows. Plaintiff alleges that his house in Upper Gwynedd Township[4] was sold to the Lougherys at a Sheriff's sale in December 2013. According to plaintiff, he did not learn of the sale until he arrived at the house in January 2014 to discover a van parked in the driveway and defendants William Loughery and Stephen Howard standing in the garage with a locksmith.

Plaintiff pleads that when he inquired about the presence of the three men in "his house," Howard informed him: "It's not your house – we bought it at Sheriff's Sale." A

---

2. Each answer contains state-law counterclaims against plaintiff.

3. The Lougherys have filed two motions for partial judgment on the pleadings, one docketed by William Loughery (doc. # 58) and one docketed by Jennifer Loughery (doc. # 60). However, the two motions are identical. We will therefore analyze them as one motion.

4. The disputed property has a postal address in North Wales, Pennsylvania, but is actually located in Upper Gwynedd Township.

confrontation ensued, prompting the locksmith to call the Upper Gwynedd Township police.  Shortly thereafter, Jennifer Loughery arrived at the house, as did two police officers.  The officers spoke to plaintiff and to the defendants separately.  According to plaintiff, one of the officers directed him not to enter the home, and the other officer stated:  "[y]ou don't own the home – [defendants] bought it at Sheriff's Sale."  Plaintiff claims that he explained that he had received no notice of the sale but that the officers ignored him.

      Ultimately, plaintiff was permitted to enter the house for ten minutes to retrieve some of his personal belongings.  He claims that the officers told him that he would be contacted at a later date so that he could retrieve the rest of his belongings.  He avers "[u]pon information and belief [that] at behest of [d]efendants, the police officers told [p]laintiff that if he returned to the home he would be charged with trespass and arrested."  Since that time, plaintiff has not been contacted to retrieve his personal effects, which, he states, are worth approximately $10,000.

      Plaintiff now pleads that "[d]efendants through . . . the Upper Gwynedd Police Department unlawfully executed a 'lockout' – even though a required action in ejectment was never filed by Defendants, William and Jennifer Loughery."  In Count I of his Second Amended Complaint, he maintains that defendants are liable

-3-

for constitutional violations pursuant to 42 U.S.C. § 1983 on the ground that they "clothed themselves with color of state authority through the use of the Upper Gwynedd Township Police Department." He avers that defendants are state actors within the meaning of § 1983 "[v]ia the Upper Gwynedd Township Police Department." Finally, plaintiff pleads that the Upper Gwynedd Township conducted an ejectment "on the directive of Defendants" and that said defendants "caused the state to use legal and executory force."

The Lougherys seek judgment on the pleadings in their favor with respect to Count I of plaintiff's Second Amended Complaint, which contains plaintiff's federal constitutional claims. They argue that plaintiff has failed properly to allege liability under 42 U.S.C. § 1983. Specifically, the Lougherys take the position that plaintiff has not adequately alleged that they operated as state actors or "under color of state law" as required for a successful § 1983 claim. In addition, they maintain that even if their conduct did amount to state action for purposes of § 1983, plaintiff has failed to establish that any constitutional violation took place as a result of such conduct.

II.

The standard for evaluating a motion for judgment on the pleadings pursuant to Rule 12(c) "is the same as the familiar standard used for evaluating a motion to dismiss under Rule (12)(b)(6)." Accurso v. Infra-Red Servs., Inc., 23 F. Supp.

3d 494, 499 (E.D. Pa. 2014) (internal citations omitted). Accordingly, "the distinction between a motion under 12(b)(6) and a motion under 12(c) 'is purely formal.'" Id. (quoting Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990)).

The standard used for a motion to dismiss under Rule 12(b)(6) therefore guides our determination. When ruling on such a motion, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. Planco Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In making our determination, we may also consider matters of public record as well as any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

In order to survive a Rule 12(b)(6) motion to dismiss, a claim must do more than raise a "mere possibility of misconduct." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d

-5-

Cir. 2009) (quoting Iqbal, 556 U.S. at 679).  Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  Instead, the complaint must contain factual matter sufficient to state a claim that is facially plausible, meaning that "the plaintiff [has] plead[ed] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.  A complaint which "pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility.'"  Id. (citing Twombly, 550 U.S. at 557).

Count I of plaintiff's Second Amended Complaint asserts liability against the Lougherys and the other defendants pursuant to 42 U.S.C. § 1983.  In relevant part, § 1983 provides:

> Every person whom under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 does not create substantive rights in and of itself, but instead provides a remedy for violations of constitutional or other federally established rights.  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  Significantly, in order to state a claim for relief under § 1983, a plaintiff must allege in his complaint that he has been subjected to such a deprivation and that the deprivation "was committed by a person acting under color of state law."  Id. (internal citations omitted).  Moreover, in order to state a § 1983 claim, a plaintiff must allege each defendant's "personal involvement in the alleged wrongs."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  Personal involvement "can be shown through allegations of personal direction or of actual knowledge and acquiescence," but such allegations "must be made with appropriate particularity."  Id.

       Purely private conduct, no matter how wrongful, is not conduct "under color of state law" within the meaning of § 1983.  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999).  The acts of a private party are committed "under color of state law" only if the deprivation complained of is "fairly attributable to the state."  Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).  This requirement is satisfied in two contexts:  where there is "an *activity* that is significantly encouraged by the state or in which the state acts as a joint participant" and where there is "an *actor* that is controlled by the state, performs a function delegated by

-7-

the state, or is entwined with government policies or management." Leshko v. Servis, 423 F.3d 337, 340 (3d Cir. 2005) (emphasis in original) (internal citations omitted). A plaintiff who pleads that a private party acted "under color of state law" by directing the conduct of law enforcement must allege "the existence of a prearranged plan by which the police substituted the judgment of private parties for their own official authority." Cruz v. Donnelly, 727 F.2d 79, 80 (3d Cir. 1984). Our colleagues in this district have consistently held that by merely communicating with or furnishing information to law enforcement officials, a private party does not become a state actor for § 1983 purposes. See, e.g., Dickerson v. DeSimone, Inc., No. 09-1551, 2011 WL 3273228, at *3 (E.D. Pa. Aug. 1, 2011); Lawson v. Rite Aid of Pa., Inc., No. 04-1139, 2006 WL 2136098, at *3 (E.D. Pa. July 26, 2006); Cooper v. Muldoon, No. 05-4780, 2006 WL 1117870, at *7 (E.D. Pa. Apr. 26, 2006).

In his brief in opposition to the instant motion, plaintiff clarifies that he "does not challenge the foreclosure nor [the] Loughery's [sic] title; only, [the] Loughery's [sic] use of the police to carry on an unlawful ejectment." The gravamen of his claim is that the Lougherys are liable for constitutional violations because they engaged the Upper Gwynedd Township Police Department to remove plaintiff from the disputed property.

Plaintiff's Second Amended Complaint contains no allegations to support his claim that the Lougherys acted "under color of state law" within the meaning of § 1983. He has not plausibly alleged that the Lougherys "act[ed] as . . . joint participant[s]" with the state. See Leshko, 423 F.3d at 340. Nor has plaintiff pleaded "the existence of a prearranged plan by which the police substituted the judgment of private parties for their own official authority." See Cruz, 727 F.2d at 80. Plaintiff merely claims that the Lougherys were present at the disputed home when the police were called and that they spoke with the officers. This type of communication with law enforcement officers does not amount to activity committed "under color of state law." See, e.g., Dickerson, No. 09-1551, 2011 WL 3273228, at *3. While plaintiff goes on to state that "[d]efendants clothed themselves with color of state authority" and that they are state actors "[v]ia the Upper Gwynedd Township Police Department," these averments are precisely the type of "[t]hreadbare recitals of the elements of a cause of action" rejected by the Supreme Court. See Iqbal, 556 U.S. at 678.

Plaintiff's arguments in support of his pleading fail for an additional reason. Nowhere in his Second Amended Complaint has plaintiff alleged facts linking the Lougherys to the challenged state action. The Lougherys played no role in "enlisting" the police to remove plaintiff from the house. Indeed, according to

-9-

the Second Amended Complaint, it was the locksmith – and not either of the Lougherys – who called the police department.  Although plaintiff claims that the responding officers "spoke to Plaintiffs [sic] and Defendants separately," he does not allege that either of the Lougherys gave any direction to the police or to any other state actor.  In sum, plaintiff has failed adequately to plead that the Lougherys had "personal involvement in the alleged wrongs." See Rode, 845 F.2d at 1207.

Plaintiff insists that our analysis should be guided by the Seventh Circuit's recent decision in Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana, -- F.3d --, 2015 WL 2151851 (7th Cir. May 8, 2015).  He argues that Runnion "illustrates a [m]ovant's difficult burden as well as the constrictions upon a District Court:  a [p]laintiff need only plead that which is in his knowledge therein minimally giving notice to [d]efendants consistent with FRCP 8."  Runnion focuses primarily on the circumstances under which a plaintiff may amend her complaint after a motion to dismiss it has been granted.  Id.  The Seventh Circuit states only briefly that "plaintiffs' 'pleading burden should be commensurate with the amount of information available to them'. . . . We cannot expect . . . a plaintiff to plead information she could not access without discovery."  Id. at *13 (quoting Bausch v. Stryker Corp., 630 F.3d 546, 561 (7th Cir. 2010)).  Plaintiff's reliance on Runnion is misplaced.  We do not

fault plaintiff for failing "to plead information [he] could not access without discovery."  See id.  There is no indication that plaintiff's Second Amended Complaint, bolstered by the type of information that would be obtained through discovery, would survive a motion to dismiss.  Moreover, Runnion, as a decision of the Seventh Circuit, is not binding upon us.

      Having determined that the alleged constitutional deprivation was not "committed by a person acting under color of state law," we need not reach the issue whether plaintiff has adequately pleaded that such a deprivation occurred.  See Kneipp, 95 F.3d at 1204.  We will grant the motion of the Lougherys for partial judgment on the pleadings and enter judgment in their favor and against plaintiff.